UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL AXELSON,

       Plaintiff,

v.

       Case No. 09-12514

       Honorable Patrick J. Duggan

MICHIGAN DEPARTMENT OF
CORRECTIONS, CORRECTIONAL
MEDICAL SERVICES, INC., MIAN Z.
QAYYUM, GREG C. SOTTEK, DALE
KINNER, and KHAWAJA N. IKRAM,

       Defendants.
_____/

## OPINION AND ORDER

Former Michigan prisoner Michael Axelson ("Plaintiff"), with the assistance of counsel, filed a two-count complaint against Defendants on June 25, 2009. Plaintiff filed an amended complaint on August 20, 2009, In Count I of his complaint, Plaintiff alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendants interpret Count II of Plaintiff's complaint as alleging gross negligence in violation of Michigan Law.

In an Opinion and Order issued April 9, 2010, this Court granted a motion for summary judgment filed by Defendant Khawaja N. Ikram ("Dr. Ikram"). Presently pending before the Court are the following:

(1)     A motion to dismiss and for summary judgment filed by Defendants Dale Kinner, LPN ("Nurse Kinner") and the Michigan Department of Corrections ("MDOC") on April 27, 2010 (Doc. 46);

(2) A motion to dismiss and for summary judgment filed by Defendants Correctional Medical Services, Inc. ("CMS") and Mian Z. Qayyum, M.D. ("Dr. Qayyum") on May 7, 2010;

(3) A motion to dismiss and for summary judgment filed by Defendant Greg C. Sottek, R.N. ("Nurse Sottek") on May 11, 2010; and

(4) Plaintiff's objections to Magistrate Judge Michael Hluchaniuk's September 28, 2010 order denying Plaintiff's motion to amend his witness list and extend discovery.

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Rule 56(b). Plaintiff filed a response to Defendants' motions on June 17, 2010.[1] This Court held a motion hearing on October 28, 2010.

At the motion hearing, Plaintiff's counsel informed the Court that Plaintiff is no longer pursuing a gross negligence claim against Defendants. Counsel also conceded that Nurse Sottek was not deliberately indifferent to Plaintiff's medical needs and therefore indicated that Plaintiff is dismissing his claims against this defendant. Finally, Plaintiff's counsel acknowledged that, to the extent any individual defendants are state officials (i.e. Nurse Kinner and Nurse Sottek) and are sued in their official capacities, they are entitled to Eleventh Amendment immunity.

For the reasons that follow, the Court rejects Plaintiff's objections to Magistrate Judge Hluchaniuk's September 28, 2010 order and concludes that Defendants are entitled to dismissal or summary judgment with respect to Plaintiff's claims.

**I.     Plaintiff's Objections to Magistrate Judge Hluchaniuk's Order**

---

[1] Plaintiff filed the same response to all three motions, although he filed it three times on the docket with a different heading. (*See* Docs. 55, 56, 57.)

Pursuant to the scheduling order issued in this case on September 2, 2009, all witnesses were to be identified by October 31, 2009, all discovery completed by January 31, 2009, and dispositive motions were to be filed by February 15, 2010. (Doc. 24.) The schedule subsequently was amended, setting a discovery cut-off of April 30, 2010, and a motion cut-off of May 15, 2010. (Doc. 38.)

Plaintiff filed a witness list on October 29, 2009, which included a generic reference to experts that were "noticed and allowed before trial." (Doc. 33.) At no time prior to filing his response to the pending motions to dismiss and for summary judgment did Plaintiff inform Defendants that he intended to call an expert witness. In support of his response to those motions, however, Plaintiff submitted a letter to his counsel from orthopedist James Beale, M.D., in which Dr. Beale states his opinion that surgery should have been performed on Plaintiff's thumb within 10-14 days after his accident "to prevent the fixed finger that he now has." (*See* Doc. 55 Ex. 4.)

On July 1, 2010, approximately two weeks after responding to Defendants' motions, Plaintiff filed a motion to add Dr. Beale as an expert to his witness list and to extend discovery to supplement his evidence with Dr. Beale's opinion. This Court referred Plaintiff's motion to Magistrate Judge Hluchaniuk for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. 62.) Finding that Plaintiff's failure to disclose Dr. Beale was not substantially justified or harmless, *see* Fed. R. Civ. P. 37(c)(1), Magistrate Judge Hluchaniuk denied Plaintiff's motion in an order entered September 28, 2010. (Doc. 70.) Plaintiff filed objections to the magistrate judge's order on October 12, 2010.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, a magistrate judge's nondispositive pretrial orders shall not be reversed unless they are "clearly erroneous or contrary to law." A magistrate judge's decision on a nondispositive pretrial matter "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948). If there are two permissible views of the evidence, a magistrate judge's choice between them cannot be "clearly erroneous." *Anderson v. City of Bessmer*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1512 (1985).

In his objections, Plaintiff fails to demonstrate that Magistrate Judge Hluchaniuk's decision is clearly erroneous. The only new evidence Plaintiff offers in his objections to justify the late disclosure of Dr. Beale is his claim that he lacked health insurance and the means to see a doctor before Dr. Beale. (Doc. 71 ¶ 9.) However, according to the letter Dr. Beale provided to Plaintiff's counsel– which is notably dated April 22, 2010– Dr. Beale examined Plaintiff on February 8, 2010. This is almost five months before Plaintiff moved to add Dr. Beale as a witness. Thus this Court cannot find that Plaintiff's alleged lack of health insurance or a means to see a doctor provides substantial justification for his failure to identify this witness. Accordingly, the Court affirms Magistrate Judge Hluchaniuk's well-reasoned decision.

**II.     Standards Applicable to Defendants' Motions to Dismiss and for Summary Judgment**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, – U.S. – , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

Summary judgment pursuant to Rule 56(b) is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

### III. Factual Background

At approximately 8:00 p.m. on May 13, 2008, while incarcerated at MDOC's Jackson Cooper Correctional Facility ("JCS"), Plaintiff fell out of a bunk bed and injured his outstretched left hand. Later that evening, Plaintiff reported his injury to MDOC Officer Brent Smith ("Officer Smith"). Plaintiff claims that Officer Smith phoned the health care unit but was told that Plaintiff should submit a "kite" for treatment. (Pl.'s Resp. Ex. 9 ¶ 1.) Although he recalls speaking with Plaintiff that evening, Officer Smith does not remember calling the health care unit and there is no record of the call being made in the log for Plaintiff's unit or the health care unit. (Doc. 46 Exs. C, D, E at 24.)

The following day, May 14, Plaintiff approached MDOC Officer Kenneth Frankenhouse ("Officer Frankenhouse") and asked that health care be contacted about his thumb. Officer Frankenhouse called the health care unit and spoke with an individual who told him to tell Plaintiff to "kite" his injury. Although Officer Frankenhouse could not identify the person with whom he spoke on May 14, he testified during his deposition in this case that he knew it was not Nurse Kinner, whose voice he indicated he would have recognized. (*Id.* Ex. F at 17.) During his deposition in this case, Nurse Kinner denied taking Officer Frankenhouse's call or otherwise having contact with Plaintiff on this date. (*Id.* Ex. G ¶ 6.)

Early in the morning on May 15, 2008, Nurse Sottek examined Plaintiff in the health care unit. (Doc. 46 Ex. B.) Nurse Sottek observed that Plaintiff's left hand was swollen and discolored in the thumb area to index finger and was painful with range of motion, but noted that Plaintiff was "[i]n no distress at this time." (*Id.*) Nurse Sottek

applied an Ace wrap to the site, noted that Plaintiff was taking Naproxen for pain and would continue its use, and directed that an ice detail be given and an x-ray ordered. (*Id*.) An x-ray was ordered that day. (Doc. 47 Ex. A at 156.)

X-rays of Plaintiff's left hand were taken in the emergency room at the Duane L. Waters Health Center ("DWH") in Jackson, Michigan on May 21, 2008, confirming that Plaintiff had fractured his thumb. (*Id*. at 000155.) According to the notes from Plaintiff's visit to DWH, dictated by nurse Judith Weed, a splint was applied, Motrin prescribed, and a "407" was completed for Plaintiff to be seen by an orthopedic specialist. (*Id*.)

Nurse Sottek again saw Plaintiff in JCS' health care unit on May 29, 2008. At that time, Plaintiff complained to Nurse Sottek that he still had not seen an orthopedic specialist concerning his injury. Nurse Sottek contacted Nurse Kinner, CMS coordinator at JCS, who indicated that a "407" had not been generated yet. (Doc. 47 Ex. A at 152.) Nurse Kinner arranged for Plaintiff's consultation with Nurse Kinner, Nurse Sottek, and Dr. Qayyum that day so that Dr. Qayyum could complete a "407" requesting Plaintiff's consultation with an orthopedist within one week. (*Id*. at 148-152.) The report from Plaintiff's consultation with Dr. Qayyum reflects that Plaintiff still was receiving naproxen for pain. (*Id*. at 151.) The following day, CMS approved the "407" request. (*Id*. at 146.)

On June 5, 2008, Plaintiff received a consultation with Dr. Ikram, an orthopedic surgeon. (*Id*. at 144-145.) Dr. Ikram provided Plaintiff with the options of letting the thumb heal naturally or having surgery, warning that neither option guaranteed that he would regain full range of motion in his thumb. (*Id*.) Plaintiff elected surgery and Dr.

8

Ikram requested that it be done within ten days. (*Id*.) A "407" for Plaintiff's surgery was submitted that day and approved on June 12, 2008.

In the interim, Dr. Qayyum re-examined Plaintiff's thumb on June 9, 2008. (Doc. 47 Ex. A at 140.) At that visit, Dr. Qayyum ordered pre-operative labs to be drawn on June 11 in anticipation of Plaintiff having surgery and requested surgery within five days. (*Id*. at 143.)

On June 12, 2008, Dr. Qayyum examined Plaintiff's thumb for a third time. (*Id*. at 136.) Dr. Qayyum indicates in his notes from the visit that he had called Dr. Ikram's office regarding the scheduling of Plaintiff's surgery. (*Id*.) Dr. Qayyum examined Plaintiff further on June 16, 2008, noting that Nurse Kinner was working to get Plaintiff scheduled for surgery "ASAP." (*Id*. at 134.)

Nurse Kinner's notes on June 17 indicate that he called Dr. Ikram's office the previous day in an attempt to expedite the scheduling of Plaintiff's surgery, but was informed that the nurse who regularly scheduled surgeries was not in the office. (*Id*. at 132.) Nurse Kinner asked for a second nurse and was told they would call him back; however, he never received a call. (*Id*.) Nurse Kinner called Dr. Ikram's office on June 17 and was told that the scheduling nurse still was not available, but they would have her call him as soon as possible. (*Id*.)

At some point on June 17, Nurse Kinner was provided a surgery date for Plaintiff of June 30, 2008. (*Id*. at 26.) Nurse Kinner sent a fax to Dr. Ikram's office on June 17, in which Dr. Qayyum noted that the date provided was not within Dr. Ikram's initial indication that surgery should be performed within 10 days of June 5. (*Id*.) In response,

9

Plaintiff's surgery was moved to June 23, 2008. (*Id*. at 27.)

Dr. Ikram performed Plaintiff's surgery on June 23. (*Id*. at 28-29.) Complaining that the delay between his initial injury and surgery caused his thumb to heal out of place, Plaintiff filed this lawsuit on June 25, 2009. He was discharged from JCS on October 21, 2009.

## IV. Law Applicable to Plaintiff's Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983

### A. Section 1983 Generally

To succeed on a claim under § 1983, a plaintiff must show that the defendant acted under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). "Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 109 S. Ct. 2304, 2309-10 (1989) (internal citation omitted). Eleventh Amendment immunity extends to "state instrumentalities," *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 903 (1997), and state officials sued in their official capacities. *Will*, 491 U.S. at 71, 109 S. Ct. at 2312. "The state of Michigan . . . has not consented to being sued in civil rights actions in the federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), and Congress did not abrogate the states' sovereign

immunity under the Eleventh Amendment when it enacted § 1983. *Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

A private individual or entity may be liable as a state actor under § 1983 where the individual or entity is engaged in a public function on behalf of the state. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). However, as with a municipality, § 1983 liability of a private entity will not attach on the basis of respondeat superior or vicarious liability. *Id.* at 818. Rather, the plaintiff must establish a policy or custom of the corporation that caused the constitutional violation. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

### B. The Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. In the context of prisoners' medical needs, courts find a violation of the Eighth Amendment only where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

An Eighth Amendment "deliberate indifference" claim consists of objective and subjective components. The objective component requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.'" *Ford*, 535 F.3d at 495 (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

11

necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990).

The subjective component of a deliberate indifference claim requires the plaintiff to show that the defendants had "a sufficiently culpable state of mind in denying [the plaintiff] medical care." *Id.* at 895 (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).

Where a plaintiff's Eighth Amendment claim is based on an alleged delay in treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quotation marks and citation omitted). As the Sixth Circuit subsequently clarified in *Blackmore*, however:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

390 F.3d at 898 (citing *Napier*, 238 F.3d at 742).

**V. Analysis**

12

### A. Plaintiff's § 1983 claim against MDOC

MDOC is an arm of the state of Michigan. *See McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010). Thus MDOC is entitled to Eleventh Amendment immunity from liability under § 1983. MDOC's motion to dismiss therefore is granted.

### B. Plaintiff's § 1983 claim against CMS

As set forth above, to establish CMS' liability under § 1983, Plaintiff must demonstrate that a policy, practice, or custom of CMS caused the alleged deprivation of his Eighth Amendment rights. Plaintiff alleges in his complaint that the acts of the defendants violating his constitutional rights were "performed pursuant to officially sanctioned policies, practices, ordinances, regulations, and customs of [CMS] . . ." (Pl.'s Am. Compl. ¶ 51.) In response to CMS' motion for summary judgment, however, Plaintiff fails to identify any specific policy, practice, ordinance, regulation, or custom of CMS. The bare allegations in Plaintiff's complaint, unsupported by any evidence, are insufficient to demonstrate a genuine issue of material fact with respect to CMS' liability. Thus the Court holds that CMS is entitled to summary judgment with respect to Plaintiff's § 1983 claim.

### C. Plaintiff's § 1983 against Nurse Kinner and Dr. Quyyam in their individual capacities

#### 1. The Objective Component of Plaintiff's Eighth Amendment Claim

As an initial matter, the Court questions whether Plaintiff's injured thumb constituted a serious medical need satisfying the objective component of his Eighth Amendment claim. It is not clear that his condition was one ". . . that has been diagnosed

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Blackmore, supra.* When Dr. Ikram examined Plaintiff, one option he gave Plaintiff was letting the break heal naturally. (Doc. 47 Ex. A at 144-145.) Even if some treatment was necessary for Plaintiff's injury, there is no evidence suggesting that it required "prompt medical attention." *See Napier.*

Where emergency medical attention is not necessary, the Court believes that Plaintiff must demonstrate that any delay in treatment rose to a constitutional violation. Pursuant to *Napier*, to satisfy his burden, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay . . ." 238 F.3d at 742. Plaintiff fails to do so.[2] Defendants, in comparison, provide the sworn statements of Dr. Ikram and their retained expert in orthopedic surgery, Paul Droulliard, D.O. (Doc. 47 Exs. B, C.) Dr. Droulliard opines that any delay in treating Plaintiff's thumb did not "affect[] the outcome of prognosis in any way." (*See, id.* Ex. C.) Dr. Ikram states that "[w]hether the surgery had occurred on June 5, or June 23, 2008, did not increase the risk that Mr. Axelson would ultimately experience a decrease in his range of motion." (*Id.* Ex. B ¶ 10.)

But even if Plaintiff satisfied the objective component of his claim, the Court finds that he cannot satisfy the subjective component.

---

[2]Based on Magistrate Judge Hluchaniuk's September 28, 2010 order, Plaintiff is precluded from offering Dr. Beale's letter in an attempt to satisfy his burden. *See* Fed. R. Civ. P. 37(c)(1).

### 2. The Subjective Component of Plaintiff's Eighth Amendment Claim

Plaintiff fails to present evidence to show that Nurse Kinner or Dr. Qayyum were aware of a substantial risk of harm to Plaintiff and ignored that risk. To the contrary, the facts set forth in Section III demonstrate that when presented with Plaintiff's injury, these defendants responded. Mere negligence in responding to Plaintiff's medical needs does not demonstrate deliberate indifference, as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). Further, "a difference of opinion between a prisoner and a doctor over diagnosis or treatment . . . fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need." *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001).

## VI. Conclusion

For the reasons set forth above, this Court concludes that Eleventh Amendment immunity bars Plaintiff's § 1983 claim against MDOC. The Court further concludes that Plaintiff fails to present evidence to create a genuine issue of material fact with respect to CMS' liability under § 1983. Finally, Plaintiff fails to present evidence to support an Eighth Amendment deliberate indifference claim against Nurse Kinner or Dr. Qayyum.

Accordingly,

**IT IS ORDERED**, that Plaintiff's objections to Magistrate Judge Hluchaniuk's September 28, 2010 order are rejected and the decision is **AFFIRMED**;

**IT IS FURTHER ORDERED**, that the Rule 12(b)(6) motion for dismissal and Rule 56(b) motion for summary judgment filed by the Michigan Department of

Corrections and Dale Skinner is **GRANTED**;

**IT IS FURTHER ORDERED**, that the motion to dismiss and/or summary judgment filed by Correctional Medical Services, Inc. and Mian Z. Qayyum is **GRANTED**;

**IT IS FURTHER ORDERED**, that Greg Sottek's Rule 12(b)(6) motion for dismissal and Rule 56(b) motion for summary judgment is **GRANTED** in light of the concession of Plaintiff's counsel at the motion hearing that Plaintiff lacks a viable claim against this defendant.

DATE:November 1, 2010              PATRICK J. DUGGAN
                                   UNITED STATES DISTRICT JUDGE

Copies to:
Lawrence J. Schloss, Esq.
A. Peter Govorchin, Esq.
Brian J. Richtarcik, Esq.
Randall A. Juip, Esq.
Thomas E. Keenan, Esq.
Davidde A. Stella, Esq.
Edward C. Cutlip, Jr., Esq.